UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

ARTURO YEREMIS,

                        Plaintiff,

-against-

AMERIT FLEET SOLUTIONS, CHARTER
COMMUNICATIONS INC., A-1 ALL GERMAN
CAR CORPORATION, and CITY OF NEW YORK
POLICE DEPARTMENT,

                        Defendants.
------------------------------------------------------------x

Index No.

**COMPLAINT**

Jury Trial Demanded

Venue based on case arising from a federal question

      Arturo Yeremis (herein referred to as "Mr. Yeremis" or "Plaintiff"), by and through his attorneys, Leonard Zack & Associates, for his Complaint against Defendants Amerit Fleet Solutions, Charter Communications Inc., A-1 All German Car Corporation, and the City of New York Police Department (collectively referred to as "Defendants") hereby respectfully alleges, on knowledge as to his own actions, and otherwise upon information and belief, as follows:

### THE PARTIES

      1.      Plaintiff ARTURO YEREMIS is a natural person residing in 231 Sherman Ave, New York, NY.

      2.      Defendant AMERIT FLEET SOLUTIONS ("Amerit") is a foreign corporation incorporated in the State of California and licensed to do business in the State of New York. Amerit maintains its principal place of business at 1331 North California Boulevard, Suite 150, Walnut Creek, California 94596. The place of business in which the relevant facts herein transpired were at 401 West 219th Street, New York, New York 10034.

      3.      Defendant CHARTER COMMUNICATIONS INC. is a foreign corporation incorporated in the State of Delaware and licensed to do business in the State of New York.

1

Charter Communications Inc. maintains its principal place of business at 400 Atlantic Street, Stamford, Connecticut 06901. Charter Communications Inc. is the official name of the Spectrum brands, including Spectrum Internet ("Spectrum"). Spectrum contracts Amerit for Spectrum employee vehicles. Spectrum placed a manager at the Amerit facility at 401 West 219th Street, New York, New York 10034, the place in which the relevant facts herein transpired.

4. Defendant A-1 ALL GERMAN CAR CORPORATION ("A-1 Car") is a corporation duly incorporated and existing under the laws of the State of New York and licensed to do business in the State of New York. A-1 Car maintains its principal place of business at 400 West 219th Street, New York, New York 10034.

5. Defendant CITY OF NEW YORK POLICE DEPARTMENT ("NYC Police") is a government agency of the State of New York. NYC Police maintains its principal headquarters at One Police Plaza, New York, New York 10038.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that Plaintiff's employment course and its termination were discriminatory, in violation of Title VII of the Civil Rights Act of 1964, codified in 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"). The remaining claims are so related to the federal claim that they form part of the same case, controversy, and are derived from the common nucleus of operative fact and this Court has supplemental jurisdiction over them pursuant to 28 U.S.C. § 1367.

7. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claims in this action occurred in this district and Defendants transact business within this district.

## JURY DEMAND

8.      Mr. Yeremis demands a trial by jury of all issues raised in this Complaint.

## FACTS OF THE CASE

9.      Mr. Yeremis is a person of Dominican Republic descent.

10.     Amerit is a fleet maintenance and repair company, providing services to ensure vehicles are sufficiently safe and operable for employee use.

11.     Spectrum, an internet service provider, changed its contractor for employee vehicles from a third-party to Amerit on September 15, 2017.

12.     Mr. Yeremis previously worked for the said third-party as a mechanic and had an outstanding history of work with them.

13.     Mr. Yeremis began his employment with Amerit on September 15, 2017 as a mechanic at their location at 401 West 219th Street, New York, New York 10034 ("Facility"). At all times herein relevant, Mr. Yeremis was working at Amerit in a mechanic position in a facility at this location.

14.     In order to perform as a mechanic, Mr. Yeremis has an extension selection of tools in a large toolbox measuring forty three (43) inches tall and fifty five (55) inches long, weighing three to four thousand (3000-4000) pounds, valued **greater than Sixty Thousand U.S. Dollars ($60,000)** (hereinafter referred to in its entirety as "Toolbox").

15.     Mr. Yeremis purchased these tools himself over the course of his career.

16.     Mr. Yeremis would leave the Toolbox at the Facility because it was too large and heavy for him to bring back and forth from work to home daily.

17. From 2017 to 2018, Mr. Yeremis was supervised by Mr. Shawn ("Shawn") from Spectrum, whom never found any fault with the vehicles that Mr. Yeremis serviced. The quality of work done by Arturo Yeremis.

18. In 2018, Mr. Andy Marharach ("Andy") from Amerit began also supervising Mr. Yeremis.

19. Andy was abusive to Mr. Yeremis to the point where Shawn would have to intervene. Andy would then stop his abuses for a week or two, and then continue with his abusive shouting and screaming of obscenities at Mr. Yeremis.

20. Andy is of Carribean descent. Andy immediately disliked Mr. Yeremis due to his Domincan Republic descent.

21. Shawn was later transferred and Mr. Arben ("Arben") replaced him as Mr. Yeremis' supervisor from Spectrum.

22. On Arben's first day that Arben supervised Mr. Yeremis, he told Andy that Arben wanted him out. Victor refused to tell Yeremis that Arben wanted him out.

23. Arben is of Caucasian descent. Arben immediately disliked Mr. Yeremis due to his Domincan Republican descent.

24. Arben was abusive to Mr. Yeremis and would constantly shout obscenities at Mr. Yeremis. When Mr. Yeremis would try to speak to Arben in English, Arben would scream back, "What are you talking about? I don't understand you. I don't understand you."

25. Arben was alluding to Mr. Yeremis' Dominican Republican descent and harassing Mr. Yeremis for being of Dominican Republican descent.

4

26. On May 30, 2019, Mr. Yeremis was operating an Amerit vehicle and was injured in a motor vehicle accident. Unbeknownst to Mr. Yeremis, Amerit had failed to insure the vehicle Mr. Yeremis was operating.

27. As a result of the accident, Mr. Yeremis suffered injuries and severe pain to his head, neck, and right shoulder. Mr. Yeremis had to get corrective surgery for these injuries.

28. To date, Mr. Yeremis has accrued **Thirty Six Thousand One Hundred Forty U.S. Dollars ($36,140)** in medical expenses for an operation and rehabilitation, due to Amerit's failure of maintaining the required no-fault coverage insurance.

29. As a result of his injuries and surgery, Mr. Yeremis was unable to work for months.

30. On May 26, 2020, Mr. Yeremis received medical clearance to return to work on Monday, June 8, 2020. Attached Exhibit A1 A2

31. On Friday, January 24, 2020, the Facility's security guard called Mr. Yeremis and informed him that John __ of A-1 Car ("John") had rolled Mr. Yeremis' Toolbox out of the Facility's garage. See Attached Exhibit B

32. Mr. Yeremis was still recovering, at the time of the phone call, in New Jersey and could not immediate act and obtain the toolbox back in his possession.

33. On Monday, January 27, 2020, Mr. Yeremis was still unable to locate his Toolbox. He called the NYC Police and two Caucasian officers ("Officers") answered his call. Mr. Yeremis and the two Officers went to A-1 Car.

34. The owner of A-1 Car, John's father Van Bishkoff, told the Officers that John was on vacation and would be back the following week and return everything. Mr. Yeremis asked for the Toolbox back, which was directly in his eyesight, but the A-1 Car owner told him, "No."

35. Mr. Yeremis asked the Officers to intervene, but the Officers told Mr. Yeremis to wait for John to return.

36. The Officers refused to make a report of the incident, despite Mr. Yeremis' continued requests.

37. The next week on Tuesday, February 4, 2020, Mr. Yeremis returned to the A-1 All German Car Corp. See Attached Exhibit C.  Mr. Yeremis Toolbox was still missing. See Exhibit B

38. Mr. Yeremis went to A-1 Car and asked John for his Toolbox back.

39. John refused.

40. Mr. Yeremis demanded for John to return his Toolbox once more.

41. John refused once more.

42. Mr. Yeremis threatened to call the NYC Police.

43. John was not threatened and urged Mr. Yeremis to call the NYC Police.

44. Mr. Yeremis left and did not call the NYC Police.

45. By the following week, A-1 Car had still not returned Mr. Yeremis' Toolbox.

46. On February 20, 2020, the human resource representative from Amerit informed Mr. Yeremis that he could not be working at Facility until he was medically cleared by a doctor to do so.

47. Mr. Yeremis was once more unable to work.

48. On May 28, 2020, Mr. Yeremis went to A-1 Car and John told Mr. Yeremis that he had placed the Toolbox in front of the Facility.

49. Mr. Yeremis spoke to the Facility security guard, but the guard said he had not seen the Toolbox since it was taken by John.

50. Mr. Yeremis went back to confront John about the missing Toolbox. John offered Mr. Yeremis One Thousand U.S. Dollars ($1,000) for the Toolbox.

51. Mr. Yeremis called the NYC Police.

52. When the police arrived, they went directly to the Facility to speak to the security guard for information. The security guard called Arben.

53. Arben told the police that Mr. Yeremis "only worked here for a few months, and he has been away for a long time. He no longer works here."

54. Mr. Yeremis told the police that he did indeed work at the Facility for Amerit and had to be away on medical leave. Mr. Yeremis showed the police his doctor's release stating that he could return to work on June 8, 2020.

55. Arben then replied that Mr. Yeremis could not return to work and had been fired.

56. Arben further threatened Mr. Yeremis saying that if Mr. Yeremis returned to the Facility, Arben will have Mr. Yeremis arrested.

57. Upon hearing this unfold, the police informed Mr. Yeremis he no longer had a case and once more refused to write a report and if he continued to ask for his tools he will be arrested.

58. To date, Mr. Yeremis never received any written communication telling him he had been fired, it was only on Arben's word.

59. Mr. Yeremis had never received any notice or warnings of any sort prior to his unlawful firing.

60. Since the beginning, Arben and Andy have harassed Mr. Yeremis and discriminated against Mr. Yeremis. Mr. Yeremis was threatened to be arrested if he returned to Amerit.

61. Mr. Yeremis was fired due to discriminatory reasons by an agent of Amerit.

62. Mr. Yeremis was continually harassed due to discriminatory reasons by an agent of Spectrum.

63. A-1 Car has stolen **greater than Sixty Thousand U.S. Dollars ($60,000+)** worth of personal property via the Toolbox from Mr. Yeremis.

64. The failure of the NYC Police to write reports of, to investigate, or to intervene in any way to retrieve the stolen Toolbox was due to discriminatory reasons against Mr. Yeremis.

65. Due to his accident in the uninsured Amerit vehicle, while driving in commission of work-related activities, Mr. Yeremis has accrued **Thirty Six Thousand One Hundred Forty U.S. Dollars ($36,140)** in medical expenses.

## AS AND FOR THE FIRST CAUSE OF ACTION
## AGAINST DEFENDANT AMERIT FLEET SOLUTIONS
## AGAINST DEFENDANT CHARTER COMMUNICATIONS INC.
### Discrimination in Violation of Title VII

66. Mr. Yeremis repeats and realleges each and every allegation mentioned and set forth above as if set forth verbatim herein.

67. Title VII states in relevant part at 42 U.S.C. §§ 2000e-2(a), as follows: "It shall be unlawful employment practice for an employer to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin …."

68. Amerit, by and through their agent, Andy, engaged in unlawful employment practices prohibited by Title VII by harassing, yelling obscenities at, subjecting Mr. Yeremis to a hostile work environment, and otherwise discriminating against Mr. Yeremis, as set forth herein, because of Mr. Yeremis' race, color, and/or national origin.

69. Spectrum, by and through their agent, Arben, engaged in unlawful employment practices prohibited by Title VII by harassing, yelling obscenities at, subjecting Mr. Yeremis to a hostile work environment, and otherwise discriminating against Mr. Yeremis, as set forth herein, because of Mr. Yeremis' race, color, and/or national origin.

70. As a result of Amerit and Spectrum's discrimination, Mr. Yeremis has suffered damages including, but not limited to: pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, loss of employment, loss of income, loss of other employment benefits, and other harm, both tangible and intangible, in an amount to be determined at trial but no less than **Three Hundred Fifty Thousand U.S. Dollars ($350,000) plus an excess amount to be determined in punitive damages.**

### AS AND FOR THE SECOND CAUSE OF ACTION
### AGAINST DEFENDANT AMERIT FLEET SOLUTIONS
### Wrongful Termination in Violation of Title VII

71. Mr. Yeremis repeats and realleges each and every allegation mentioned and set forth above as if set forth verbatim herein.

72. Title VII states in relevant part at 42 U.S.C. §§ 2000e-2(a), as follows: "It shall be unlawful employment practice for an employer to . . . discharge any individual ... because of such individual's race, color, religion, sex, or national origin ...."

73. Amerit, by and through their agent, Andy, engaged in unlawful employment practices prohibited by Title VII by unlawfully terminating the employment of Mr. Yeremis, as set forth herein, due to Mr. Yeremis' race, color, and/or national origin.

74. As a result of Amerit's wrongful termination, Mr. Yeremis has suffered damages including, but not limited to: pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, loss of employment, loss of income, loss of

other employment benefits, and other harm, both tangible and intangible, in an amount to be determined at trial but no less than **Three Hundred Fifty Thousand U.S. Dollars ($350,000) plus an excess amount to be determined in punitive damages.**

### AS AND FOR THE THIRD CAUSE OF ACTION
### AGAINST DEFENDANT AMERIT FLEET SOLUTION
### AGAINST DEFENDANT CHARTER COMMUNICATIONS INC.
#### Discrimination in Violation of State Law

75. Mr. Yeremis repeats and realleges each and every allegation mentioned and set forth above as if set forth verbatim herein.

76. New York State Executive Law ("NYS Law") § 296(1)(a) provides, in pertinent part: "It shall be unlawful discriminatory practice for an employer or licensing agency, because of an individual's . . . race, . . . color, [or] national origin . . . to discriminate against such individual in . . . terms, conditions, or privileges of employment."

77. Amerit, by and through their agent, Andy, engaged in unlawful discriminatory practices prohibited by NYS Law § 296 by harassing, yelling obscenities at, subjecting Mr. Yeremis to a hostile work environment, and otherwise discriminating against Mr. Yeremis, as set forth herein, because of Mr. Yeremis' race, color, and/or national origin.

78. Spectrum, by and through their agent, Arben, engaged in unlawful discriminatory practices prohibited by NYS Law § 296 by harassing, yelling obscenities at, subjecting Mr. Yeremis to a hostile work environment, and otherwise discriminating against Mr. Yeremis, as set forth herein, because of Mr. Yeremis' race, color, and/or national origin.

79. As a result of Amerit and Spectrum's discrimination, Mr. Yeremis has suffered damages including, but not limited to: pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, loss of employment, loss of income, loss of other employment benefits, and other harm, both tangible and intangible, in an amount to be

determined at trial but no less than **Three Hundred Fifty Thousand U.S. Dollars ($350,000) plus an excess amount to be determined in punitive damages.**

### AS AND FOR THE FOURTH CAUSE OF ACTION
### AGAINST DEFENDANT AMERIT FLEET SOLUTION
### Wrongful Termination in Violation of State Law

80. Mr. Yeremis repeats and realleges each and every allegation mentioned and set forth above as if set forth verbatim herein.

81. New York State Executive Law ("NYS Law") § 296(1)(a) provides, in pertinent part: "It shall be unlawful discriminatory practice for an employer or licensing agency, because of an individual's . . . race, . . . color, [or] national origin . . . to discharge from employment such individual . . . ."

82. Amerit, by and through their agent, Andy, engaged in unlawful discriminatory practices prohibited by NYS Law § 296 by unlawfully terminating the employment of Mr. Yeremis, as set forth herein, due to Mr. Yeremis' race, color, and/or national origin.

83. As a result of Amerit's wrongful termination, Mr. Yeremis has suffered damages including, but not limited to: pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, loss of employment, loss of income, loss of other employment benefits, and other harm, both tangible and intangible, in an amount to be determined at trial but no less than **Three Hundred Fifty Thousand U.S. Dollars ($350,000) plus an excess amount to be determined in punitive damages.**

### AS AND FOR THE FIFTH CAUSE OF ACTION
### AGAINST DEFENDANT CITY OF NEW YORK POLICE DEPARTMENT
### Aiding and Abetting Discrimination in Violation of State Law

84. Mr. Yeremis repeats and realleges each and every allegation mentioned and set forth above as if set forth verbatim herein.

85. NYS Law § 296(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel, or coerce the doing of any acts forbidden under this article, or attempt to do so."

86. NYC Police, by and through their agent Officers and other police that responded to Mr. Yeremis' calls, as set forth herein, participated, aided, abetted, and encouraged Defendants Amerit and Spectrum to unlawfully harass and fire Mr. Yeremis.

87. NYC Police violated the section cited herein as set forth.

88. As a result of NYC Police's aiding and abetting of Amerit and Spectrum's discriminatory practices, Mr. Yeremis has suffered damages including, but not limited to: pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, loss of employment, loss of income, loss of other employment benefits, and other harm, both tangible and intangible, in an amount to be determined at trial but no less than **Three Hundred Fifty Thousand U.S. Dollars ($350,000) plus an excess amount to be determined in punitive damages.**

### AS AND FOR THE SIXTH CAUSE OF ACTION
### AGAINST DEFENDANT A-1 ALL GERMAN CAR CORPORATION
#### Conversion in Violation of State Law

89. Mr. Yeremis repeats and realleges each and every allegation mentioned and set forth above as if set forth verbatim herein.

90. Under New York law, conversion is defined as the "unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *State v. Seventh Regiment Fund*, 98 N.Y.2d 249 (2002) (citation and internal quotation marks omitted).

91. The Court of Appeals has stated that there are two key elements of conversion: "(1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." *Pappas v. Tzolis*, 20 N.Y.3d 228 (2012).

92. Mr. Yeremis had a possessory right in Toolbox.

93. A-1 Car, by and through their agent John, unlawfully and intentionally took the Toolbox, in derogation of Mr. Yeremis' rights.

94. A-1 Car has violated the tort of conversion cited herein as set forth.

95. As a result of A-1 Car's conversion, Mr. Yeremis has suffered damages including, but not limited to: pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, loss of employment, loss of income, loss of other employment benefits, and other harm, both tangible and intangible, in an amount to be determined at trial but no less than **Three Hundred Fifty Thousand U.S. Dollars ($350,000) plus an excess amount to be determined in punitive damages.**

### AS AND FOR THE SEVENTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
**Negligent Infliction of Emotional Distress**

96. Mr. Yeremis repeats and realleges each and every allegation mentioned and set forth above as if set forth verbatim herein.

97. The above actions of Defendants, their agents, and employees constitute negligent infliction of emotional distress upon Mr. Yeremis.

98. As a result of Amerit and Spectrum's negligent infliction of emotional distress, Mr. Yeremis has suffered damages including, but not limited to: pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, loss of

employment, loss of income, loss of other employment benefits, and other harm, both tangible and intangible, in an amount to be determined at trial by no less than **Three Hundred Fifty Thousand U.S. Dollars ($350,000) plus an excess amount to be determined in punitive damages.**

## RELIEF REQUESTED

**WHEREFORE**, Mr. Yeremis demands judgement against Defendants and prays for the following relief:

1. Damages against Defendants in an amount to be determined at trial but no less than **Three Hundred Fifty Thousand U.S. Dollars ($350,000)**;

2. Costs of the action and attorney's fees, together with interest, to the full extent permitted by law against Defendants;

3. Punitive damages against Defendants Amerit, A-1 Car, and Spectrum; and

4. Such other and further relief as the Court may deem just and proper.

Dated: June 16, 2020
New York, New York

Respectfully submitted,

Leonard Zack, Esq.
*Attorneys for Plaintiff*
**LEONARD ZACK & ASSOCIATES**
505 Park Avenue, Floor 18
New York, New York 10022
Tel: (212) 754-4050

TO: **Amerit Fleet Solutions**
*Defendant*
Incorp Services, Inc.
99 Washington Ave, Suite 805-A
Albany, New York 12210

**Charter Communications Inc.**
*Defendant*
Corporation Service Company
80 State Street
Albany, New York 12207

**A-1 All German Car Corporation**
*Defendant*
400 West 219th Street
New York, New York 10034

**City of New York Police Department**
*Defendant*
Attn: Civil Section, Legal Bureau, Room 1406
One Police Plaza
New York, New York 10038