```
┌─────────────────────────────────────────┐
│ USDC SDNY                                │
│ DOCUMENT                                 │
│ ELECTRONICALLY FILED                     │
│ DOC #: _____                  │
│ DATE FILED:  4/21/2021                   │
└─────────────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- X
                                              :
ARTURO YEREMIS,                               :
                                              :
                          Plaintiff,          :                1:20-cv-04723-GHW
                                              :
                                              :              MEMORANDUM OPINION
              - v -                           :                  AND ORDER
                                              :
AMERIT FLEET SOLUTIONS, ET AL.,               :
                                              :
                          Defendants.         :
-------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

## I.    INTRODUCTION

Plaintiff Arturo Yeremis alleges that his former employer, Amerit Fleet Solutions ("Amerit"),

discriminated against him when it terminated him.  Mr. Yeremis alleges that he was not able to

collect his tool box when he left the job site.  Plaintiff's counsel filed a motion to compel responses

to a series of informal requests for information that he made to the defendants before discovery

began in this case.  He filed the motion after the Court had noted the procedural deficiencies of the

proposed motion in a written order and at length in a pre-motion conference.  After Mr. Zack filed

his motion—and failed to address any of the previously identified deficiencies in the proposed

motion—the Court ordered him to show cause why he should not be sanctioned under Rule 11.

Because Mr. Zach filed a motion that was completely without merit notwithstanding clear notice of

its deficiencies, the Court concludes that he acted in bad faith, and orders that he pay the reasonable

fees and costs that the defendants incurred defending against it.

## II.    BACKGROUND

Plaintiff Arturo Yeremis filed this action on June 16, 2019, alleging that his former employer,

Amerit, had discriminated against him on the basis of his race, color, and/or national origin, and

that his employment had been wrongfully terminated under Title VII.  Dkt. No. 1.  In addition to

his claims against Amerit, Plaintiff asserted claims against Charter Communications Inc. ("Charter Communications"), A-1 All German Car Corporation, and the City of New York Police Department.  Dkt. No. 1.  Among other relief, Plaintiff sought the return of a large tool box containing tools allegedly worth over sixty thousand dollars.  Dkt. No. 1 at 3.

Leonard Zack is Plaintiff's counsel.  Mr. Zack first attempted to have Plaintiff's tools returned to him on July 28, 2020, when he filed an emergency motion to compel Amerit to grant Plaintiff access to his locker and permit him to retrieve the items inside.  Dkt. No. 8.  According to Mr. Zack, Plaintiff needed these tools, valued at "upwards of Thirty Thousand U.S. Dollars," to obtain employment as an automotive mechanic elsewhere.  Dkt. No. 8 at 2.  Mr. Zack's motion— filed before the commencement of discovery—asserted that the legal basis for his demand was Fed. R. Civ. P. 37, which is titled "Failure to Make Disclosures or to Cooperate in Discovery; Sanctions." On July 29, 2020, the Court denied Plaintiff's application without prejudice.  Dkt. No. 9.  The Court directed Plaintiff to pursue the requested relief via the appropriate procedural mechanism—an order to show cause—because Amerit had yet to appear in the case and, to the Court's knowledge, had not yet even been served.  Dkt. No. 9.

On August 31, 2020, Mr. Zack attempted to have the tools inside Plaintiff's locker returned to him for a second time.  Dkt. No. 19.  It was on this date that Plaintiff filed a motion requesting that the Court issue an order to show cause

> why an order should not be issued pursuant to Rule 65 of the Federal Rules of Civil Procedures enjoining the defendants during the pendency of this action from refusing to permit ARTURO YEREMIS from entering the premises and removing from his locker and adjoining areas from refusal to enter the locker her [sic] formally [sic] utilized and removing therein [sic] all of this [sic] tools, which are his property, and purchased with his funds from removing them from the premises.

Dkt. No. 19.  Mr. Zack again emphasized the importance of these tools, alleging that Plaintiff's failure to obtain "procession" prevented him from working as an automobile mechanic.  Dkt. No. 19 at 2.  Mr. Zack explained that Plaintiff had attempted to retrieve the tools from his locker on July

23, 2020, but that an Amerit security guard had refused him access to the premises.  Dkt. No. 19 at 3.

The Court denied Mr. Zack's application without prejudice on September 1, 2020, finding that "the proposed order to show cause is so rife with errors and illegible handwriting that it is in some places nonsensical."  Dkt. No. 20.  Moreover, the Court noted that Mr. Zack had neither filed a memorandum of law setting forth the basis for the proposed order to show cause, nor had he presented affidavits supporting the factual findings contained in the proposed order (in violation of Court's Individual Rule 4(C) and Local Rule 7.1(2)–(3)).  Dkt. No. 20.  The Court concluded that it was unable and unwilling to endorse factual findings unsupported by affidavits, and that it could not enter the proposed order in substantially the same form as it was filed.  Dkt. No. 20.

On September 21, 2020, Plaintiff's counsel submitted a second proposed order to show cause and supporting materials.  Dkt. No. 21.  On September 22, 2020, the Court ordered Amerit and A-1 All German Car Corporation ("A-1") to show cause why "an order should not be issued pursuant to Rule 65 of the Federal Rules of Civil Procedure enjoining Defendant Amerit during the pendency of this action from refusing to permit [Plaintiff] from entering the premises at 401 West 219th Street, New York, New York, 10034 ("facility") or adjacent areas or other location where defendants Amerit or A-1 relocated plaintiff's personally purchased tools and other personal property."  Dkt. No. 22.  The Court scheduled a telephonic hearing for October 22, 2020 regarding the order to show cause.  *Id.*

On October 13, 2020, the Court held a teleconference to discuss Charter Communications' anticipated motion to dismiss the complaint.  Dkt. No. 95.  Mr. Zack arrived late. *Id.* at 5:6–9.  The Court reminded Mr. Zack that the Court's October 1 order had scheduled the October 13th conference.  *Id.* at 7:8–10.  The Court stated:

> Counsel, let me be very clear. You are obligated to comply with orders of the Court.
> If we were appearing here in person, I would order you to show cause why you should

> not be sanctioned for failure to comply with that order. Fundamentally, you have
> improperly misused the Court's, the court reporter's and your adversary's time . . . .
> Simply put, it is not acceptable for you to be ignorant of the orders placed on the
> docket by the Court and to fail to appear timely for court conferences.  Failure to
> comply with a Rule 16 order can result in the imposition of a number of sanctions,
> including, without limitation, in this case payment of your adversary's attorney's fees
> for the 30 minutes of wasted time resulting from your failure to appear here timely.

*Id.* at 10: 6–21.  In concluding the conference, the Court again cautioned Plaintiff's counsel, stating,

"I must remind you of your obligations under Rule 11 with respect to filings before the Court.

Frivolous arguments can result in imposition of sanctions."  *Id.* at 25:1–4.

On October 22, 2020, the Court held a teleconference at which it ruled on Plaintiff's

application for a preliminary injunction to allow him to recover his tools and other personal

property from his storage locker at Amerit's facility.  The Court denied Plaintiff's application,

finding that Plaintiff had not demonstrated irreparable harm.  Dkt. No. 49 at 11:22–23.  The Court

first addressed Plaintiff's July 28, 2020 emergency motion to compel access to his locker—Plaintiff's

first attempt to obtain the relief sought in the September 21, 2020 proposed order to show cause.

*Id.* at 12:1–25.  The Court stated:

> If counsel had dedicated some text of the motion to a discussion of the relevant legal
> standard, he should have been expected to realize that Federal Rule of Civil Procedure
> 37 provided no legal support for the relief requested.  That would not have required
> much work—one need look no further than the title of Rule 37, "Failure to Make
> Disclosures or to Cooperate in Discovery; Sanctions," to realize why the rule was
> inapplicable:  this is not a discovery-related dispute.  At the time that the motion was
> filed, the defendant had not yet even been served.  No discovery had commenced, so
> invoking a rule related to the consequences of a party's failure to comply with
> discovery rules is obviously meritless.

*Id.* at 12:14–25.

The October 22, 2020 teleconference was the first of multiple occasions at which the

Court cautioned Mr. Zack to abide by the Federal Rules of Civil Procedure:

> I have commented here on the serious deficiencies of plaintiff's submissions to the
> Court in connection with this request—his failure to provide adequate support for his
> applications to the Court, including a reference to a wholly inapposite rule in
> connection with the application, and his failure to present briefing that addresses the

4

relevant legal standard among them.  The initial motion in connection with this request for relief, relying only on F.R.C.P. 37, was arguably frivolous.  I hope that, going forward, counsel will work to support further submissions to the Court with non-frivolous, thoughtful statements of the relevant law, mindful of obligations to the Court and to the client [and] the strictures of Rule 11.

*Id.* at 21:10–22.

On November 11, 2020, Plaintiff filed a motion to compel Defendants to produce documents responsive to Plaintiff's first request for the production of documents.  Dkt. No. 58.  The request sought the production of documents related to Amerit's authorization to use Charter Communications' facility, Amerit's use of the locker area in the building, and the identification of certain security guards.  Because Mr. Zack had violated the Court's Individual Rule 2(C) by failing to file a pre-motion submission before filing his motion to compel, the Court denied the motion on November 13, 2020.  Dkt. No. 61.  In its written order, the Court highlighted that Plaintiff's submission was once again improper under the Federal Rules of Civil Procedure:

Plaintiff brings his motion under Fed. R. Civ. P. 37(a)(3)(B)(iv), but Defendants have not "fail[ed] to produce documents . . . as requested under Rule 34."  Plaintiff represents that he verbally asked Defendants for answers to his questions, and that Defendants "agreed to seek answers."  Plaintiff has not served written requests for production under Rule 34 on Defendants, instead including his requests in this motion.  Even if this motion could be deemed to be Plaintiff's requests for production, the party to whom the request is directed has 30 days to respond.  Fed. R. Civ. P. 34(b)(2)(A).  And, if this is a request for production, the rules do not permit counsel to file it on the docket.  *See* Fed. R. Civ. P. 5(d)(1)(A).  Moreover, under Fed. R. Civ. P. 26(d)(1), "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f) . . . ."  Plaintiff has not shown that the parties have conferred as required by Rule 26(f).  The Court will set a discovery schedule at the initial pretrial conference scheduled for December 1, 2020 at 4:00 p.m.  Plaintiff is directed to review and comply with the Court's Individual Rules of Practice in Civil Cases and the provisions of the Federal Rules of Civil Procedur[e] relevant to any submission to the Court.  In sum, this submission evidences a profound lack of understanding of the Federal Rules of Civil Procedure.  Counsel is reminded that failure to comply with the Federal Rules of Civil Procedure and the Court's Individual Rules may result in the imposition of sanctions, and that, by signing documents presented to the Court, he is making the certifications established under Fed. R. Civ. P. 11.

Dkt. No. 61.

On November 17, 2020, Plaintiff requested a pre-motion conference for his anticipated motion to compel. Dkt. No. 66. Plaintiff alleged that defendants Amerit and Charter Communications had failed to respond to Plaintiff's discovery requests. *Id.* Plaintiff maintained that a discovery request for inspection of business records, including employment contracts and payroll records confirming that Amerit was authorized to conduct business out of the Charter Communications Facility, was made to Amerit's counsel on November 5, 2020 via email, and that "numerous follow-up telephone calls" were ignored. *Id.* Mr. Zack asserted that a request to enter and examine the Charter Communications facility for the purpose of inspecting Plaintiff's former locker and adjacent areas for Plaintiff's tools and tool box was made to Charter Communications via email on October 28, 2020. *Id.* Mr. Zack stated that the email went unanswered, as did "numerous follow-up telephone calls." *Id.* Plaintiff's letter did not address any of the legal deficiencies laid out by the Court in its November 13, 2020 order, including the lack of a Rule 26(f) conference.

On November 18, 2020, a pre-motion conference was held concerning Plaintiff's proposed motion to compel discovery. At the outset of the conference, Mr. Zack expressed his concerns about his client's situation: "[Plaintiff] is a very nice man and a very good auto mechanic, but he cannot work without his tools. And for the life of me, I don't know why counsel would not cooperate to let him see if his tools are still there or in the locker. That's what I've been trying to do, and a man cannot work without his tools." Dkt. No. 81 at 3:22–25, 4:1–2. But he did not address any of the legal issues related to his motion.

The Court then asked Mr. Zack if the parties had conducted a Rule 26(f) conference to which Mr. Zack responded, "I don't believe so." *Id.* at 4:14–17. An issue, the Court explained, was "whether the requests have been properly propounded, which would turn, in part, on whether the parties have met and conferred under [R]ule 26, and whether the requests were properly made under [R]ule 34, and whether the time for a response to the requests under [R]ule 34 has passed." *Id.* at

6:1–5.  Mr. Zack stated that he was aware of each of those rules.  *Id.* at 6:8.  It soon became apparent, however, that Mr. Zack was not fully aware of the rules, as he was heard telling his assistant after a long pause:  "Cindy, give me the folder with the rules, what rules that I used.  The rules.  The rules.  The court rules 24, 26, you know."  *Id.* at 7:3–5.  The Court reminded Mr. Zack that Rule 24 relates to intervention, and that discovery rules begin with Rule 26.  *Id.* at 7:12–14.

The Court then asked Mr. Zack to explain his view regarding the impact of Rule 26(d)(1) on his application, given the lack of a Rule 26(f) conference.  *Id.* at 7:22–25.  Mr. Zack opined:

> Well, I don't think [R]ule 26(d) is the right rule because this is asking really for insurance, and I don't really care about the insurance today.  I really want to know if the tools are there, and if there is an insurance loss, which only would be if the tools mysteriously have disappeared.

*Id.* 8:1–5.  The Court asked Mr. Zack to confirm his understanding of Rule 26(d), to which Mr. Zack stated:

> Well, 26(d) really goes to whether or not there are any insurance agreements, whether any person is carrying insurance and may be liable to satisfy part or all of a judgment which may be entered in the action if needed to satisfy a judgment.  I'm more looking at what's there that he could help get back to work.

*Id.* at 8:10–15.  The Court interrupted Mr. Zack to inform him that he was describing a different rule, as Rule 26(d) is titled "Timing and Sequence of Discovery."  *Id.* at 8:17–19.  Mr. Zack responded:  "Oh."  *Id.* at 8:20.

The Court again asked Mr. Zack to again explain his view regarding the impact of Rule 26(d)(1) on his application, given the lack of a Rule 26(f) conference.  *Id.* 8:23–25.  Mr. Zack explained that "[R]ule 26 goes to required disclosures and that is what I'm looking for, and I have – [R]ule 26(d) is timing and sequence of discovery, and they require – it must confer under 26.  But I have conferred orally . . .  So, I did ask, even though it was not in a formal conference like this, those questions."  *Id.* 9:1–11.  When the Court asked Mr. Zack if the conversations he described satisfied the requirements of Rule 26(f)—with the explicit instruction to be mindful that earlier Mr. Zack told

the Court that no Rule 26(f) conference had been held—Mr. Zack maintained: "Well, not a formal conference. I mean, I did write people, call people. The planning for discovery under 26(f) is they ask for 21 days before a scheduling conference is held. Now, I don't know if it has to be a formal conference such as now." *Id.* at 9:18–22.

> The Court proceeded to lay out the legal issues presented by the potential motion to compel:

> I'm right now confronted with a potential motion to compel, and I just want to make sure that before I entertain granting leave to you to file a motion to compel, that the motion has a valid basis. Here, I focused first on the issue of whether the parties have had a [R]ule 26(f) conference and whether, as a result, under [R]ule 26(d)(1) any party is entitled to serve discovery requests . . . The second issue that I want to deal with procedurally is the question of whether or not the emails that you describe in your letter can be described as a properly formulated request for inspection under [R]ule 34. And then that takes me to the third question, which would be if, at this point in the case, you are entitled to serve discovery requests, and if your e-mails and conversations constitute proper discovery requests. Then the next question would be whether or not the parties, that is the defendants, have failed to respond timely, which is why I asked whether they had failed to respond timely, that is, within the time period provided for under the rule.

*Id.* at 10:15–25, 11:1–11.

> After informing Mr. Zack that Defendants had thirty days under Rule 34(b)(2) to respond to discovery requests, the Court instructed Mr. Zack to again state his view as to why the discovery request he made was proper, and why it was that Defendants had failed to respond within the time period permitted under the rules such that the Court could, under the terms of the federal rules, compel them to respond. *Id.* at 11:20-25. Mr. Zack told the Court:

> Now, maybe I've missed the rule here or there, and I apologize if I've done that. But [Defendants have] had over a month, and no one will let [Plaintiff] see his locker that's sitting out in the parking lot. I just think it's wrong to deprive a man of his livelihood when the original tool chest was wheeled out in the middle of the night by John. He, at that time, was trying to recover and was under doctor's orders not to go back to work until after, I think it was, June 6th of this year. Now, I don't know what to say. I really don't. I'm flabbergasted. I've tried very nice to talk to the lawyers. I've discussed with them having a meeting and letting him look at his tool chest, look for his locker, and I never got an answer. So that's why I filed my letter with the Court requesting this conference.

*Id.* at 13: 7–20.  The Court, while understanding Mr. Zack's concern for the interests of his client, informed him that he did not have a legal basis for his motion to compel, and further noted that the motion "could be frivolous and, therefore, sanctionable."[1]  *Id.* at 14:2–5.

Counsel for Charter Communications informed the Court that they had never received written discovery requests from Mr. Zack, having only received a letter on October 29th asking for counsel to go to the facility and look for the tools.  *Id.* at 15:11–12, 18–21.  Counsel for Amerit echoed the sentiment of Charter Communications' counsel, stating that the parties had not yet had a Rule 26 conference, and so in accordance with Rule 26, Mr. Zack should not be serving discovery. *Id.* at 18:5–7.  He emphasized that even if Mr. Zack had properly served discovery requests, "it's certainly clear that if he is citing to a letter of November 5th, the time for us to have responded to such discovery, you know, according with [R]ule 34, has not expired yet."  *Id.* at 18:10–13.  Counsel for Amerit expressed his frustration with the situation, stating:   "I think there's no basis for this motion.  I think the motion is frivolous.  I think it shows either a disregard or a lack of knowledge of the rules, which are there for us all to understand how this case should, you know, to a certain extent, be run."  *Id.* at 18:19–25.  Counsel for Amerit concluded with his belief that the filing of a motion to compel would be sanctionable.  *Id.* at 20:12.

The Court concluded the conference by informing Mr. Zack that he would be granted leave to file his motion to compel, but that in granting him leave, the Court was not making a determination that the proposed motion was not frivolous.  *Id.* at 21:16–24.  As the Court explained:

> Mr. Zack, I'm happy to entertain the motion to compel.  By saying that I'm happy to entertain it, I'm not saying anything about my views regarding its merit.  If you would like to submit a motion with respect to this issue as you've requested, I'll grant you leave to do so, but again, by granting you leave to file the motion, I'm not saying anything about my view of the anticipated motion.  I'm not making a determination now that the motion itself, as proposed, is not frivolous. . . .  I hope that you will be

---

[1] Indeed, the Court was very understanding of Mr. Zacks's concern for the interests of his client.  Apart from discussing the legal merits of the motion, the Court encouraged the parties to discuss the return of Plaintiff's tools outside of the context of Plaintiff's motion.  *Id.* at 24:9-25:5.

able to present an argument to the Court that is based on a non-frivolous position regarding the applicable law.

*Id.* at 21:16–24, 22:1–3.

Mr. Zack informed the Court that he wished to proceed with his proposed motion. *Id.* at 22:9-12. After establishing a briefing schedule for the motion, the Court provided the parties with a reminder:

> Again, counsel, I remind you of your obligations under the Federal Rules of Civil Procedure which apply in all federal litigation and, in particular, your obligations under [R]ule 11 with respect to motions that are signed by you. I will evaluate the motion with those rules very much at the forefront of my mind.

*Id.* at 23:11-16.

Notwithstanding the Court's November 13, 2020 order and the comprehensive discussion of the legal deficiencies of Mr. Zack's motion during the pre–motion conference, Plaintiff filed his proposed motion to compel discovery pursuant to Rule 37. Dkt. No. 73. The motion addressed none of the substantive legal issues raised during the conference. It did not provide the legal basis for Plaintiff's motion. Instead, Mr. Zack emphasized the inequity of not allowing Plaintiff access to his tools, and the "great economic harm" Plaintiff suffers in being unable to practice his profession and earn a livelihood. *Id.* at 8.

After reviewing Mr. Zack's motion, in a teleconference on December 1, 2020, counsel for both Amerit and Charter Communications stated that they intended to move for sanctions. Dkt. No. 99 at 6:1–10, 9–20. The Court explained to the parties:

> Rule 11 has specific requirements regarding a motion for sanctions by the parties. The motion requirements are described in Rule 11(c), which require, among other things, a premotion letter to counsel to permit counsel to withdraw the offending filing or pleading within the 21-day grace period. So if the motion that the defendants seek to bring is one under Rule 11, I can't excuse compliance with the procedural requirements of Rule 11(c)(2). Now, however, here, I believe that it's warranted for the Court to issue an order to show cause why sanctions under Rule 11 are not warranted as a result of the imposition or as a result of the filing of this motion to compel, and I am ordering counsel to show cause why such sanctions are not warranted.

*Id.* at 28:3–16.

> The Court then laid out the reasons for its order:
>
> First, in the November 13, 2020 memo endorsement issued by the Court, the Court reminded counsel [of] the importance of understanding the requirements of the Federal Rules of Civil Procedure. The Court reminded counsel that failure to comply with those rules can result in the imposition of sanctions and that by signing documents presented to the Court, counsel is making the certifications provided for under Rule 11 of the Federal Rules.
>
> During our premotion conference, I elucidated a number of issues with respect to the proposed motion, and I provided specific guidance regarding concerns about the prospect that the motion may be frivolous and therefore sanctionable. Among other things, I said the following: "To be clear, counsel for plaintiff, the request is for leave to file a premotion, or was a premotion conference request letter. That says to me that you're requesting leave to file a motion to compel. It's for that reason that I ask you about the legal basis for the motion to compel, because while I understand that you are concerned for the interests of your client, you don't have a legal basis for the motion that you ultimately present to the Court, it could be frivolous and therefore sanctionable." . . .
>
> And then later, I said, in sum and substance, the following: "Again, counsel, I remind you of your obligations under the Federal Rules of Civil Procedure, which apply in all federal litigation, and in particular your obligations under Rule 11 with respect to motions that are signed by you. I will evaluate the motion with those rules very much at the forefront of my mind." I reviewed the motion to compel that was filed. It does not address any of the substantive legal issues that I flagged during the conference as potential deficiencies with the motion as proposed. As a result, counsel for plaintiff, I'm ordering you to show cause why I should not sanction you for filing a frivolous motion to compel.

*Id.* at 28:20–25, 29:1–25, 30:1–3.

Mr. Zack then asked: "I would like to know when you would like my response to your motion I should show cause why I did not file an answer to a frivolous motion . . . You said I have to file a motion to compel showing the legal basis, and you also said I must respond to the answer that my motions could be considered frivolous, and I want to know if that is correct what you said."

*Id.* at 30:22–25, 31:4–8. In response, the Court again explained:

> Prior to the motion to compel, we held a premotion conference. During that conference, I discussed with you and the other parties a number of issues related to the proposal for you to file a motion to compel at this stage in the litigation . . . The motion that you filed did not address any of the substantive concerns addressed by

the Court during the premotion conference; instead, the motion was filed without regard to any of the substantive concerns that were flagged during the conference. As a result, I am ordering you to show cause why you should not be sanctioned for the motion that you have already filed. I am not ordering you to file another motion. I am ordering you to show cause why you should not be sanctioned as a result of your motion to compel production of responses to email requests that were sent prior to the 26(f) conference and a motion to compel that you sent in less than 30 days prior to the response date for those email requests, if they were proper discovery requests, among other concerns that were articulated during the course of the conference.

So as I told you in my Order that I entered in November, and as you were told during the prior conference, by signing a document presented in federal court, you are certifying things that are described in Rule 11, and if it turns out that an argument that you're presenting is frivolous, it can be sanctioned. I am ordering you to show cause why you should not be sanctioned as a result of the motion to compel that you filed because of evident deficiencies in that motion – deficiencies that were flagged during the prior conference and which did not inform the document that you submitted to the Court.

*Id.* at 32:2–25, 33:1–13. In a written order entered on December 7, 2020, the Court followed up on its oral order delivered during the December 1 conference, directing Mr. Zack to show cause why he should not be sanctioned for the motion to compel discovery filed on November 25, 2020. Dkt. No. 76.

That same day, both defendant Charter Communications and defendant Amerit filed opposition motions to Plaintiff's motion to compel. Dkt. No. 77, Dkt. No. 78. In its opposition, Charter Communications argued that:

Plaintiff's Motion to Compel is frivolous, a waste of judicial resources, and the latest request, of many, that he has been brought before this Court improperly and with no regard to the Federal Rules of Civil Procedure ("FRCP"). Fatal to Plaintiff's motion is the fact that he has failed to serve written discovery requests, has not allowed the time prescribed under the FRCP for Charter to respond to any written requests (if any had been served), and falsely certifies that the parties have conferred in good faith on these issues. Plaintiff's repeated phone calls and emails asking questions about the parties' business relationship and suggesting that the parties set up a site visit are not discovery requests, and are not an attempt to confer in good faith on a bona fide discovery issue.

Dkt. No. 77 at 1. Defendant Amerit similarly asserted that Plaintiff's motion was frivolous and that it had been filed "[i]n blatant disregard of the Federal Rules of Civil Procedure [], the Local Rules of

the Southern District of New York, this Court's individual Rules of Practice in Civil Cases, and warnings by this Court."  Dkt. 78 at 1.

On December 18, 2020 Plaintiff withdrew his November 25th motion to compel discovery. Dkt. No. 86.  Mr. Zack contended that he, in good faith, attempted to comply with the Rules of Civil Procedure and believed, in good faith, that the telephone meetings with Defendants discussing the case and requesting discovery satisfied the strictures of Rule 26.  *Id.* at 6.  Mr. Zack stated, however, that "[a]s the Court opined in the Telephone Conference with the Court on November 18, 2020 and again in the Premotion Conference on December 1, 2020 that Plaintiff's Motion to Compel Discovery was not in conformance with the rules, we have reconsidered and respectfully withdraw Plaintiff's Motion to Compel Discovery."  *Id.*

Mr. Zack appears to believe that, because he has withdrawn his motion, sanctions are inappropriate under the safe harbor provision of Rule 11.  *Id.* at 6, 7.  His response states:

> Under the Safe Harbor rule, sanctions may not be appropriate if the subject of sanctions is withdrawn.  If the party against who, sanctions are sought corrects the alleged violation during this "safe harbor" period by withdrawing the offending document, there is no Rule 11 liability and the motion for sanctions should not be filed.

*Id.* Sadly, this reflects yet another instance of counsel's glancing engagement with the substance of the relevant law, and failure to attend to the content of conferences.  As will be discussed in more detail momentarily—and as the Court stated to Mr. Zack and the other parties on the record during the conference on December 1, 2020—the safe-harbor provision does not apply when the Court initiates an inquiry into whether counsel's conduct should be sanctioned under Rule 11.

### III.    LEGAL STANDARDS

#### A.  *Imposing Sanctions Under the Court's Inherent Powers*

"Because of their very potency, inherent powers must be exercised with restraint and discretion."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).  "In order to impose sanctions

pursuant to its inherent power, a district court must find that: (1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, *i.e.*, motivated by improper purposes such as harassment or delay." *Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 143 (2d Cir. 2012). "Although both findings must be supported by a high degree of specificity in the factual findings, bad faith may be inferred only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Id.* (internal citations and quotation marks omitted). A claim is "entirely without color when it lacks any legal or factual basis. Conversely, a claim is colorable when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim." *Schlaifer Nance & Co. Inc. v. Estate of Warhol*, 194 F.3d 323, 336–37 (2d Cir. 1999).

B. *Rule 11*

Rule 11 imposes on attorneys "an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing." *Bus. Guides, Inc.* v. *Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991). Federal Rule of Civil Procedure 11(b) provides that an attorney filing a motion certifies, "to the best of the [attorney's] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). "There are therefore two identifiable grounds for sanctions under Rule 11: the frivolous clause and the improper purpose clause. In addition, the frivolous clause has two subparts: whether the party or attorney has made a reasonable inquiry into the facts, and whether

14

the party has made a reasonable inquiry into the law.  A violation of either subpart of the 'frivolous'

clause constitutes a violation of Rule 11." *Bruno v. City of New York*, No. 89 Civ. 6661, 1992 WL

84471, at *3 (S.D.N.Y. 1992) (internal citations, quotation marks, and punctuation omitted); *see, e.g.*,

*Enmon*, 675 F.3d at 143.  The rule requires litigants to "'stop-and-think' before initially making legal

or factual contentions." Fed. R. Civ. P. 11, 1993 Advisory Committee Notes.  Here, the question is

whether counsel for Plaintiff stopped and thought—if he made a reasonable inquiry into the law

before filing his motion.

"With respect to legal contentions, the operative question is whether the argument is

frivolous, i.e., the legal position has no chance of success, and there is no reasonable argument to

extend, modify or reverse the law as it stands." *Star Mark Management, Inc. v. Koon Chun Hing Kee Soy*

*& Sauce Factory, Ltd.*, 682 F.3d 170, 177 (2d Cir. 2012) (internal quotation marks and alteration

omitted).

Courts maintain a high bar for establishing a Rule 11 violation given judicial concern for

encouraging zealous advocacy. *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 179 (S.D.N.Y. 2008).

However, if "the court determines that Rule 11(b) has been violated, the court may impose an

appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for

the violation." Fed. R. Civ. P. 11(c)(1).  "[I]f the district court concludes that the assertion of a given

claim violates Rule 11 . . . the decision whether or not to impose sanctions is a matter for the court's

discretion." *Bobcar Media, LLC v. Aardvark Event Logistics, Inc.*, No. 16-CV-885 (JPO), 2019 WL

422613, at *2 (S.D.N.Y. Feb. 4, 2019).  However, any sanction "must be limited to what suffices to

deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P.

11(c)(4).

The 1993 Advisory Committee Note to Rule 11 lays out factors that a court may consider in

deciding whether to impose sanctions.  Those factors include:

(1) whether the improper conduct was willful, or negligent; (2) whether it was part of a pattern or activity, or an isolated event; (3) whether it infected the entire pleading, or only one particular count or defense; (4) whether the person has engaged in similar conduct in other litigation; (5) what effect it had on the litigation process in time or expense; (6) whether the responsible person is trained in the law; (7) what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case.

*Colliton v. Cravath, Swaine & Moore LLP*, 08 Civ 0400(NRB), 2008 WL 4386764 at *12 (S.D.N.Y. Sept. 24, 2008) (*quoting Kochisarli v. Tenoso*, No. 02-CV-4320, 2006 WL 721509, at *8 (E.D.N.Y. Mar. 21, 2006)); *see also* Fed. R. Civ. P. 11, 1993 Advisory Committee Notes.

There are two procedural paths to sanctions under Rule 11—either Rule 11(c)(2) or Rule 11(c)(3). A party may make a motion for sanctions under Rule 11(c)(2). A party's motion for sanctions must comply with Rule 11's safe harbor requirement and provide their opposing party with a draft of the motion 21 days before filing it with the court. *See ED Capital, LLC v. Bloomfield Investment Resources Corp.*, 316 F.R.D. 77, 82 (S.D.N.Y. 2016). "The non-movant is then afforded a 21-day safe harbor period to withdraw or correct the challenged paper, claim, defense, contention, or denial before the movant is allowed to file or present the motion to the court." *New V & J Produce Corp. v. NYCCaterers Inc.*, No. 13 Civ. 4861(ER), 2014 WL 5026157, at *4 (S.D.N.Y. Sept. 29, 2014).

Rule 11(c)(3) authorizes the Court to impose sanctions on its own initiative. Fed. R. Civ. P. 11(c)(3); *see also Muhammad v. Walmart Stores East, L.P.*, 732 F.3d 104, 108 (2d Cir.2013) ("Rule 11 also gives the court the power to initiate sanctions proceedings *sua sponte*."). By its express terms, unlike when a party moves for Rule 11 sanctions under Rule 11(c)(2), the safe harbor provision does not apply when the Court initiates Rule 11 sanctions *sua sponte* under Rule 11(c)(3). *See e.g. Muhammad v. Walmart Stores East, L.P.*, 732 F.3d 104, 108 (2d Cir. 2013) (holding that "the 21–day safe harbor does not apply [when sanctions are initiated by a court sua sponte] and the court may impose sanctions without providing opportunity to withdraw the misstatement.").

16

Because counsel does not benefit from the safe-harbor provision in the case of a *sua sponte* Rule 11 sanction, a higher mental state requirement applies than when sanctions are sought by motion.  When a motion for sanctions is brought under Rule 11(c)(2), a lawyer may not be sanctioned unless the lawyer acted with "objective unreasonableness."  *In re Pennie & Edmonds LLP*, 323 F.3d 86, 90 (2d Cir. 2003).  By contrast, in the case of a *sua sponte* Rule 11 sanction under Rule 11(c)(3), the court must make a finding of subjective bad faith.  *Id.*; *see also In re JJE & MM Group LLC*, 692 F. App'x 43, 45 (2d Cir. 2017) (summary order) ("A finding of subjective bad faith on the part of the attorney is required to impose Rule 11 sanctions *sua sponte*.").  In *Pennie*, the Second Circuit reasoned that a heighted *mens rea* requirement for *sua sponte* sanctions was appropriate because of the 'absence of a 'safe harbor' opportunity to reconsider risks shifting the balance to the detriment of the adversary process."  *In re Pennie & Edmonds LLP*, 323 F.3d at 91.  The court looked to cases imposing sanctions under the court's inherent powers and 28 U.S.C. § 1927, to conclude that "when applying sanctions under Rule 11 for conduct that is 'akin to a contempt of court,' a bad faith standard should apply."  *Id.* at 90.

"Bad faith can be inferred when the actions taken are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose."  *Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 338 (2d Cir. 1999) (internal quotations and citations omitted); *see also Oliveri v. Thompson,* 803 F.2d 1265, 1272 (2d Cir.1986) ("[B]ad faith may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation.").  "[T]he court's factual findings of bad faith must be characterized by a high degree of specificity."  *Schlaifer Nance & Co.*, 194 F.3d at 338.

## IV.   DISCUSSION

Plaintiff's motion to compel was clearly not objectively reasonable.  Moreover, because Plaintiff's counsel was repeatedly warned of the flaws in his motion, and filed the completely

meritless motion nonetheless with no effort to even address the basic legal issues placed in front of him, the Court concludes that counsel acted in bad faith. Plaintiff's counsel now acknowledges that "the Court opined in the Telephone Conference with the Court on November 18, 2020 . . . that Plaintiff's Motion to Compel Discovery was not in conformance with the rules." Dkt. No. 86 at 6. But that was not the first time that Mr. Zack was alerted to the fact that his proposed motion did not comply with the Federal Rules of Civil Procedure. In the Court's November 12, 2020, the Court advised Mr. Zack that his submission to the Court was improper because he filed his motion under Fed. R. Civ. P. 37(a)(3)(B)(iv) when Defendants had not "fail[ed] to produce documents . . . as requested under Rule 34," as Plaintiff never effected proper service of any requests in the first place. Dkt. No. 61. In the same order, the Court noted that "Plaintiff has not shown that the parties have conferred as required by Rule 26(f)." *Id.* That order clearly noted the lack of consideration of the relevant rules by counsel, and consequently expressly reminded counsel of his obligations under Rule 11. *Id.*

Nothing had changed in the procedural posture of the case when Mr. Zack requested a pre-motion conference on November 17, 2020. Dkt. No. 66. The telephone conference on November 18, 2020 was then the second time that the Court cautioned Mr. Zack that Plaintiff's motion to compel discovery was not in conformance with the rules. The Court has described the detailed content of the discussion between the Court and the parties regarding the evident deficiencies in the proposed motion. Nevertheless, Mr. Zack proceeded to file Plaintiff's motion to compel discovery one week later. The motion, when filed, contained no discussion or analysis of the various concerns regarding the motion that had been flagged for Mr. Zach several times prior to its filing.

In light of the Court's order, and the communications between the Court, and counsel regarding those issues, the Court concludes that Plaintiff's motion was more than merely objectively unreasonable—it was so completely without merit that it must have been advanced for an improper

purpose.  Counsel showed a deliberate disregard of the law and counsel's obligation to consider and to comply with it.

Plaintiff's discovery requests were plainly improper.  Rule 26(d)(1) provides that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized . . . by court order."  Fed. R. Civ. P. 26(d)(1).  No Rule 26(f) conference was held before Plaintiff requested discovery from Defendants, nor did the Court authorize him to do so by court order.  Moreover, the requests themselves were not properly served.  "The Federal Rules require that requests for discovery be made formally, and that requests be focused and specific.  Every discovery request must be made in a writing signed by an attorney of record to certify that the request is consistent with the Federal Rules of Civil Procedure."  *R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 41 (S.D.N.Y. 2010).  An informal verbal discussion does not constitute proper service of a discovery request under the Rule.

Even if this Court were to accept Plaintiff's argument—that conferring orally with defense counsel satisfied the requirements of Rule 26(f) and exchanging emails and phone calls with defense counsel constituted proper requests for inspection under Rule 34 (it does not)—there still would be no valid basis for Plaintiff's motion to compel on the date on which it was filed.  Under Rule 34(b)(2)(A), a party has 30 days to respond to a document request or inspection demand.  Mr. Zack did not give Defendants 30 days to respond to his informal discovery requests.  Therefore, even if this Court were to accept Plaintiff's argument, his motion to compel was nevertheless premature and improper.

Mr. Zack argues that sanctions are inappropriate because he withdrew his motion.  Dkt. No. 86.  Mr. Zack is wrong.  Under the safe harbor provision of Rule 11, a party can avoid sanctions if they withdraw a flawed submission within a 21-day period after notice.  *See* Fed. R. Civ. P. 11(c)(2) (A motion for sanctions, "must not be filed or be presented to the court if the challenged paper,

19

claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service."). However, as described above, the safe harbor provision does not apply to Court-initiated Rule 11 sanctions: "a *sua sponte* Rule 11 sanction denies a lawyer the opportunity to withdraw the challenged document pursuant to the 'safe harbor' provision." *In re Pennie & Edmonds LLP*, 323 F.3d 86, 87 (2d Cir. 2003); *see also ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 150 (2d Cir. 2009) (quoting Fed. R. Civ. P. 11 advisory committee notes (1993 amendment)) ("Since show cause orders will ordinarily be issued only in situations that are akin to a contempt of court, the rule does not provide a 'safe harbor' to a litigant for withdrawing a claim, defense, etc., after a show cause order has been issued on the court's own initiative."). Therefore, Mr. Zack may not take refuge in the safe harbor—it simply does not apply here.

Moreover, this is a case in which Mr. Zack had multiple opportunities to consider the wisdom of his course of action. This is not a situation in which the Court raised the prospect of Rule 11 sanctions with respect to the motion only after it was filed. As described above, the Court and the defendants alerted Mr. Zack repeatedly regarding the legal deficiencies of his motion before it was filed. Mr. Zack benefited from the close kin of a safe harbor—prior notice of the deficiencies of his motion to allow him to consider and address them meaningfully. Mr. Zack plowed forward notwithstanding multiple red flags, without apparent thought to the substance of the governing law. The Court can only conclude that counsel acted in bad faith by pursuing a completely meritless motion, at a time when he was (or should have been) fully aware of its deficiencies. That Mr. Zack chose to file a motion that did not even nod to the legal concerns identified for him contributes to the conclusion that he must have been acting in furtherance of an improper purpose—such as by forcing the defendants to engage in meritless motion practice in order to obtain leverage for his efforts to obtain a favorable resolution of the principal issue being pursued by his client: the return of his toolbox.

Mr. Zack suggests in his reply that he was unaware of the rules at the time that he filed his motion. The Court does not need to conclude that Mr. Zack understood that he was flouting of the rules at the time of his motion—or if, instead, he was ignorant of them, as he now asserts.[2] Mr. Zack was confronted several times with extremely clear statements regarding the deficiencies of his proposed motion. If he did not know how the Federal Rules worked before the Court's order, and the comprehensive discussion of the issues during the pre–motion conference, it was bad faith misconduct for him to choose not to educate himself before filing his motion. At best, Mr. Zack chose to remain willfully blind. Mr. Zack filed a motion that was completely without merit notwithstanding clear prior notice of its deficiencies, and without even attempting to address the known issues. As a result, the Court concludes that Mr. Zack acted in bad faith.

The Court turns now to a brief assessment of the other factors recommended in the Advisory Committee Notes to the 1993 amendments to Rule 11. Unfortunately, as noted in the description of the procedural history of this case, there are suggestions that Mr. Zack's inattention to the law that led to this motion may be part of a pattern. The Court had occasion to remind counsel for Plaintiff regarding his compliance with Rule 11 with respect to other arguments presented to the Court prior to this motion to compel. In addition, the Court observes that in this case, Plaintiff brought discrimination, and intentional infliction of emotional distress claims against the New York City Police Department ("NYPD") because of its asserted failure to help him get his toolbox. Compl., Dkt. No. 1, ¶ 64 ("The failure of the NYC Police to write reports of, to investigate, or to intervene in any way to retrieve the stolen Toolbox was due to discriminatory reasons against [sic] Mr. Yeremis.") Plaintiff voluntarily dismissed those claims after he was presented with the legal support for the NYPD's anticipated motion to dismiss. Dkt. No. 44. Plaintiff also brought claims

---

[2] As described above, there is evidence from Mr. Zack's comments at the conferences that he did have limited understanding of the rules at the time.

against Defendant Amerit notwithstanding the existence of an arbitration provision in an employment agreement entered into with him. Dkt. No. 68. Plaintiff voluntarily dismissed his claims against Amerit after being presented with the legal arguments in support of Amerit's anticipated motion to compel. Dkt. No. 89. While these examples might be read to suggest that Plaintiff may have advanced meritless claims in the action, in this context, the Court views Plaintiff's conduct in response to these defendants' pre-motion letters as positive, mitigating factors— examples of counsel taking on board deficiencies in his legal theory, and responding to them.

The motion at issue here had only a limited impact on the case as a whole, given that Mr. Zack has withdrawn the request. The Court is not aware of other instances of similar misconduct in other cases.[3] This motion has had a prejudicial effect on the defendants in the litigation. Principally, the motion has required the investment of time by the defendants, and the Court, in responding to the motion. The Court believes that the sanction that is described below should be adequate to deter Mr. Zack from similarly meritless motion practice.

The Court appreciates that now Mr. Zack understands the deficiencies in his motion, but now is too late. All of the other parties and the Court have been required to brief, and now opine on, a patently frivolous motion. The Court is mindful that it must exercise "restraint and discretion" in imposing sanctions under Rule 11. *Pannonia Farms, Inc. v. USA Cable*, 426 F.3d 650, 652 (2d Cir. 2005). Still, the Court believes monetary sanctions are necessary to sanction Mr. Zack for his frivolous motion practice. The filing of legally baseless motions is not a permissible strategy regardless of an attorney's view of the equity of his goal.

To mitigate the prejudicial effect of Mr. Zack's frivolous motion practice on the defendants, the Court expects to order Mr. Zack to pay all or a portion of the reasonable fees and expenses that the defendants incurred in responding to Mr. Zack's motion to compel. The Court will not require

---

[3] The Court has not engaged in any independent investigation of this topic, so the Court's data set is limited.

that Mr. Zack compensate the defendants for time prior to the filing of the motion to compel, including time spent on pre-motion conferences, and discussions regarding the requested information.  Defendants are directed to submit an accounting of their fees and expenses in connection with their oppositions to the motion—including detailed time entries—to the Court no later than two weeks after the filing of this order.  Mr. Zack may file an opposition to the fee application no later than two weeks following the date of service of the defendants' fee applications. The Court will determine the appropriate amount of sanctions to impose after evaluating the cost and fee applications by Defendants, and any feedback from Mr. Zack regarding his ability to pay those amounts.

## V.     CONCLUSION

For the reasons described above, the Court is sanctioning Mr. Zack under Federal Rule of Civil Procedure 11.  The amount of the award of sanctions will be determined after the Court has reviewed the defendants' submissions and Mr. Zack's response.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 73.

SO ORDERED.

Dated:  April 21, 2021
New York, New York

_____
GREGORY H. WOODS
United States District Judge