USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _______________
DATE FILED: 12/13/21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARTURO YEREMIS,

Plaintiff,

-v-

CHARTER COMMUNICATIONS INC. and A-1 ALL GERMAN CAR CORPORATION,

Defendants.

1:20-cv-4723-GHW

MEMORANDUM OPINION & ORDER

GREGORY H. WOODS, United States District Judge:

## I. INTRODUCTION

Arturo Yeremis was a mechanic at Amerit Fleet Solutions ("Amerit") in New York City. In May of 2019, Mr. Yeremis was seriously injured in a car accident involving an Amerit vehicle. Amerit put Mr. Yeremis on medical leave and ultimately terminated his employment. Mr. Yeremis, who is of Dominican Republic descent, alleges that he was discriminated against on the basis of his race, color, and national origin while working for Amerit.

Mr. Yeremis brought this Title VII discrimination action against both Amerit and Charter Communications Inc. ("Charter"), a company that contracted with Amerit to fix and maintain Charter vehicles. But Mr. Yeremis was never employed by Charter and he has failed to plausibly allege a joint employer relationship between Amerit and Charter. Because he had no employment relationship with Charter, his Title VII claim against Charter must be dismissed. The Court declines to exercise supplemental jurisdiction over his remaining state law claims and therefore the remaining claims against Charter, and all claims against A-1 All German Car Corporation ("A-1"), are dismissed.

## II. BACKGROUND

### a. Facts[1]

"Mr. Yeremis began his employment with Amerit on September 15, 2017." Dkt. No. 1, Complaint ("Compl.") at ¶ 13. He worked for Amerit as a mechanic at their facility at 401 West 219th Street, New York, New York 10034 (the "Facility"). *Id.* Charter, a telecommunications company, "is the official name of the Spectrum brands, including Spectrum internet."[2] *Id.* at ¶ 3. Charter contracted with Amerit to fix and maintain Charter's employee vehicles. *Id.* at ¶ 11. Charter and Amerit began working together on September 15, 2017, the same day Mr. Yeremis began his employment with Amerit. *Id.* at ¶¶ 11, 13. Prior to September 15, 2017, Mr. Yeremis worked as a mechanic for Charter's previous vehicle maintenance contractor. *Id.* ¶¶ 11–13. In 2020, Mr. Yeremis "was fired . . . by an agent of Amerit." *Id.* at ¶ 61.

Mr. Yeremis alleges that "at all times herein relevant, [he] was working at Amerit in a mechanic position[.]" *Id.* at ¶ 13. Starting in 2018, Mr. Yeremis was supervised by an Amerit employee named Andy Maharach. *Id.* at ¶ 18. Mr. Yeremis was also supervised by two Charter employees. *Id.* at ¶¶ 17, 21. From 2017 to 2018, Mr. Yeremis was supervised by Mr. Shawn. *Id.* at ¶ 17. After Mr. Shawn was transferred to another position, Mr. Yeremis was supervised by Mr. Arben. *Id.* at ¶ 21.

Mr. Yeremis alleges that "[s]ince the beginning, [Mr. Maharach and Mr.] Arben have harassed [him] and discriminated against [him]." *Id.* at ¶ 60. He claims that this discrimination was based on his "race, color, and/or national origin." *Id.* at ¶¶ 68, 78. Mr. Arben "immediately disliked

---

[1] Unless otherwise noted, the facts are taken from the complaint, and are accepted as true for purposes of this Rule 12(b)(6) motion. *See, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] Plaintiff refers to this defendant as both "Charter" and "Spectrum" in his complaint. For consistency, the Court will refer to this defendant only as "Charter."

Mr. Yeremis due to his Dominican Republican descent." *Id.* at ¶ 23. Mr. Arben is Caucasian. *Id.* On Mr. Arben's first day supervising Mr. Yeremis, Mr. Arben told Mr. Maharach that he "wanted [Mr. Yeremis] out." *Id.* at ¶ 22. Mr. Arben "was abusive to Mr. Yeremis and would constantly shout obscenities" at him. *Id.* at ¶ 24. When Mr. Yeremis "would try to speak to [Mr.] Arben in English, [Mr.] Arben would scream back, 'What are you talking about? I don't understand you. I don't understand you.'" *Id.* According to Mr. Yeremis, Mr. Arben "was alluding to Mr. Yeremis' Dominican Republican descent and harassing Mr. Yeremis for being of Dominican Republican descent." *Id.* at ¶ 25.

On May 30, 2019, Mr. Yeremis was hurt in an automobile accident while driving an Amerit vehicle. *Id.* at ¶ 26. Mr. Yeremis underwent surgery following the accident. *Id.* at ¶ 27. As a result of his injuries and the surgery, Mr. Yeremis was unable to work for several months. *Id.* at ¶ 29. On January 24, 2020, while Mr. Yeremis was away from work and recovering from his injuries and surgery, Mr. Yeremis was informed by the Facility's security guard that "John," an employee of A-1, had removed Mr. Yeremis's toolbox from the Facility's garage. *Id.* at ¶¶ 31, 32. A-1 is a "repair & service specialist" located at 400 West 219 Street in Manhattan. *Id.* at Ex. B. Mr. Yeremis would leave his toolbox at the Facility because it weighed between 3,000 and 4,000 pounds. *Id.* at ¶¶ 14, 16. Mr. Yeremis made two attempts in January and February of 2020 to recover the toolbox from A-1, but was unsuccessful both times. *Id.* at ¶¶ 33, 37.

It appears that Mr. Yeremis attempted to return to work some time in February of 2020. *Id.* at ¶¶ 46–47. However, on February 20, 2020, a human resources representative from Amerit told Mr. Yeremis that he needed to receive medical clearance before he could return to work. *Id.* at ¶ 46. On May 26, 2020, Mr. Yeremis received medical clearance from his doctor to return to work starting on June 8, 2020. *Id.* at ¶ 30, Ex. A.

After being cleared to return to work, Mr. Yeremis made a third attempt to recover his

toolbox from A-1. *Id.* at ¶ 48. On May 28, 2020, Mr. Yeremis spoke with John from A-1. *Id.* John told Mr. Yeremis "that he had placed the Toolbox in front of the Facility." *Id.* Mr. Yeremis asked the Facility's security guard if he had seen it, and the security guard told Mr. Yeremis that he had not seen the toolbox since it had been taken from the garage by John. *Id.* at ¶ 49. Mr. Yeremis confronted John again. *Id.* at ¶ 50. This time, John offered Mr. Yeremis $1,000 for the toolbox. *Id.* Mr. Yeremis called the New York City Police Department ("NYPD"). *Id.* at ¶ 51.

Police officers arrived at the Facility and spoke to the Facility's security guard. *Id.* at ¶ 52. The security guard called Mr. Arben. *Id.* "[Mr.] Arben told the police that Mr. Yeremis 'only worked here for a few months, and he has been away for a long time. He no longer works here.'" *Id.* at ¶ 53. "Mr. Yeremis told the police that he did indeed work at the facility for Amerit" but had been on medical leave. *Id.* at ¶ 54. "[Mr.] Arben then replied that Mr. Yeremis could not return to work and had been fired." *Id.* at ¶ 55. "[Mr.] Arben further threatened Mr. Yeremis [by] saying that if Mr. Yeremis returned to the Facility, [Mr.] Arben [would] have Mr. Yeremis arrested." *Id.* at ¶ 56. The NYPD officers then determined that Mr. Yeremis "no longer had a case." *Id.* at ¶ 57. Mr. Yeremis has still not recovered his toolbox, which he claims is worth over $60,000. *Id.* at ¶ 63.

"Mr. Yeremis never received any written communications telling him he had been fired[.] [I]t was only on [Mr.] Arben's word." *Id.* at ¶ 58. Mr. Yeremis "never received any notice or warnings of any sort" before he was fired. *Id.* at ¶ 59. He alleges that he was fired "due to discriminatory reasons by an agent of Amerit." *Id.* at ¶ 61.

**b. PROCEDURAL HISTORY**

On June 19, 2020, Mr. Yeremis filed his complaint (the "Complaint") against everyone involved in this series of incidents, including the NYPD, A-1, Charter, and Amerit. *See generally* Compl. On October 28, 2020, Mr. Yeremis voluntarily dismissed his claims against the NYPD under Federal Rule of Civil Procedure 41(a)(1)(A)(i). Dkt. No. 48. On January 4, 2021, Mr. Yeremis

and Amerit stipulated to the dismissal of Plaintiff's claims against Amerit with prejudice because he had agreed to arbitrate any claims against it. Dkt. Nos. 76, 90. His remaining claims, therefore, are against Charter and A-1.

Mr. Yeremis alleges that Charter subjected him to a hostile work environment and discriminated against him on the basis of his race, color, and national origin in violation of both Title VII and the New York State Human Rights Law ("NYSHRL"). Compl. at ¶¶ 66–70, 75–79. He also alleges that Charter is liable for negligent infliction of emotional distress. *Id.* at ¶ 96–98. Charter moved to dismiss the claims against it on November 13, 2020. Dkt. No. 64, ("Mot. to Dismiss"). Mr. Yeremis filed his opposition on December 13, 2020. Dkt. No. 84 ("Opp'n"). Charter filed a Reply Memorandum in Support of the Motion to Dismiss on December 21, 2020. Dkt. No. 87 ("Reply"). Mr. Yeremis filed another Opposition to the Motion to Dismiss on December 28, 2020. Dkt. No. 88 ("Reply Opp'n").

Mr. Yeremis alleges that John took his toolbox and that A-1 is therefore liable for conversion under New York State law. Compl. at ¶¶ 89–95. He also brings a claim for negligent infliction of emotional distress against A-1. *Id.* at ¶¶ 96–98. A-1 moved to dismiss on January 8, 2021. Dkt. No. 91. Mr. Yeremis filed an Opposition to the Motion to Dismiss on February 3, 2021. Dkt. No. 94.

## III. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If a complaint does not meet this standard, a defendant may move to dismiss it for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss based on Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 544).

A court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). But the Court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013) (citation omitted). And a complaint that offers "labels and conclusions" or "naked assertion[s]" without "further factual enhancement" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 557). "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).[3]

## IV. DISCUSSION

### A. Title VII

Mr. Yeremis has not alleged that Charter was his employer or that Charter and Amerit jointly employed him. Therefore, the Court dismisses his Title VII claims against Charter.

[3] Mr. Yeremis is now litigating this case *pro se*, following the withdrawal of his counsel. Dkt. Nos. 110, 115. Mr. Yeremis was represented by counsel during motion practice, however, so the Court does not afford his pleading or briefing the leniency accorded to *pro se* litigants. *See e.g.*, *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (noting that "[i]t is well established that the submissions of a *pro se* litigant must be construed liberally.").

1. Employer Liability

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). "Title VII imposes liability for employment discrimination only on an 'employer.'" *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 197 (2d Cir. 2005); *see also Gulino v. New York State Educ. Dep't*, 460 F.3d 361, 370 (2d Cir. 2006) ("[T]he existence of an employer-employee relationship is a primary element of Title VII claims."). "[W]hen Congress uses the term 'employee' without defining it with precision, courts should presume that Congress had in mind 'the conventional master-servant relationship as understood by the common-law agency doctrine.'" *O'Connor v. Davis*, 126 F.3d 112, 115 (2d Cir. 1997) (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322–23 (1992)). The Second Circuit has cautioned that "[a]n expansive definition of 'employer' contravenes Supreme Court precedent and fundamental canons of statutory interpretation." *Gulino*, 460 F.3d at 374.

There are thirteen non-exclusive factors to consider when assessing whether one was an "employer" for Title VII purposes:

> [Th]e hiring party's right to control the manner and means by which the product is accomplished . . . [;] the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Id.* at 371 (quoting *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 751–52 (1989)). "Although '[n]o one of these factors is determinative,' 'the common-law element of control is the principal guidepost that should be followed[.]'" *Id.* (internal citation omitted) (first quoting *Reid*, 490

U.S. at 752; then quoting *Clackamas Gastroenterology Associates, P.C. v. Wells*, 538 U.S. 440, 448 (2003)). For the control factor, "[w]hat is at issue is not merely the right to dictate the outcome of the work, but the right to control the 'manner and mean' by which the hiree accomplishes that outcome." *Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 228 (2d Cir. 2008) (citing *Reid*, 490 U.S. at 751).

Mr. Yeremis has not plausibly pleaded that he was employed by Charter. In fact, he states that "at all times herein relevant, [he] was working at Amerit in a mechanic position[.]" Compl. at ¶ 13. Mr. Yeremis alleges very few facts that are relevant to the factors laid out in *Gulino*, and the facts which he does plead, do not suggest that Charter employed him. He alleges that Mr. Shawn and Mr. Arben "supervised" him but does not describe what control, if any, these Charter employees exercised over his work. Compl. at ¶¶ 17, 21. Further, Mr. Yeremis alleges that he worked at an *Amerit* facility. *See id.* at ¶ 3. He also alleges that Amerit was the hiring and firing party, not Charter. *Id.* at ¶¶ 13, 61. Therefore, Mr. Yeremis has not plausibly alleged that Charter was his employer.

2. Single Employer and Joint Employer Liability

Although there are two "recognized doctrines that enable an employee in certain circumstances to assert employer liability against an entity that is not formally his or her employer," Mr. Yeremis has not alleged that either doctrine applies here. *Arculeo*, 425 F.3d at 197. "These doctrines are sometimes called the 'single employer' (or 'single integrated employer') and the 'joint employer' doctrines." *Id.*

"A 'single employer' situation exists where two nominally separate entities are actually part of a single integrated enterprise . . . .'" *Id.* at 198 (quoting *Clinton's Ditch Cooperative Co. v. NLRB*, 778 F.2d 132, 137 (2d Cir. 1985)). There is no suggestion in the Complaint that Amerit and Charter share common ownership and management, or that they are in any other sense integrated entities. Thus, Mr. Yeremis has not plausibly alleged that the two entities operate as a single employer. *See id.*

(citing "parent and wholly-owned subsidiary corporations" and "separate corporations under common ownership and management" as examples of single integrated employers); *Gilani v. Hewlett-Packard Co.*, No. 15-CV-5609, 2018 WL 4374002, at *4 (S.D.N.Y. Sept. 12, 2018) ("The 'single employer' doctrine is inapplicable where, as here, there is no indication that the two corporations . . . are 'separate corporations under common ownership and management.'" (quoting *Arculeo*, 425 F.3d at 198)).

Nor has he adequately pleaded the existence of a joint employer relationship. The joint employer doctrine provides that "an employee, formally employed by one entity, who has been assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity, may impose liability for violations of employment law on the constructive employer[.]" *Arculeo*, 425 F.3d at 198. "A joint employer relationship may be found to exist where there is sufficient evidence that the [defendant] had immediate control over the other company's employees." *NLRB v. Solid Waste Servs.*, 38 F.3d 93, 94 (2d Cir. 1994). The Second Circuit "has not yet fully analyzed or described a test for what constitutes joint employment in the context of Title VII . . . " *Arculeo*, 425 F.3d at 199 n.7. Instead, courts in this district are guided by National Labor Relations Board ("NLRB") cases where "the joint employer doctrine has been well-developed . . . ." *Id.* at 198 n.6. The Second Circuit has cautioned, however, that the doctrine does not necessarily have "an identical shape in both NLRB and Title VII contexts" and notes that "[t]he indicia suggesting a conclusion of joint employment may vary depending on the purpose of the inquiry." *Id.* at 198 n.6, 199 n.7.

The joint employer inquiry in the NLRB context considers "a variety of factors, such as exercise of authority to hire, fire, and discipline, control over pay and insurance, and supervision . . . ." *Id.* at 202. These factors "bear on whether an entity, which is not the formal employer, may be considered a joint employer." *Id.*; *see also Farmer v. Shake Shack Enters.*, 473 F. Supp. 3d 309, 323

(S.D.N.Y. 2020) ("'[F]actors courts have used to examine whether an entity constitutes a joint employer of an individual include commonality of hiring, firing, discipline, pay, insurance, records, and supervision.'" (quoting *Shiflett v. Scores Holding Co.*, 601 F. App'x 28, 30 (2d Cir. 2015)). "'An essential element'" of a joint employment relationship is that the defendant had "'immediate control over the employees." *Farmer*, 473 F. Supp. 3d at 322–23 (quoting *Serv. Emps. Int'l Union, Local 32BJ v. NLRB*, 647 F.3d 435, 442 (2d Cir. 2011)).

Mr. Yeremis has not adequately pleaded that Charter was his joint employer. He does not provide any factual support for the assertion that Amerit and Charter jointly employed him or that the two entities had commonality of hiring, firing, pay, insurance, records, discipline, or supervision. In looking at the facts alleged by Mr. Yeremis, the Court finds that Mr. Yeremis has not alleged that he was constructively employed by Charter.

First, Mr. Yeremis has not claimed that Charter and Amerit had a shared hiring process; in fact, he has not provided any details of Amerit's hiring procedures or his application process. The only fact he alleges about his hiring is that he worked for Charter's previous vehicle maintenance contractor before he began working for Amerit. Compl. at ¶ 12. Mr. Yeremis does not allege that Charter played any role in Amerit's decision to hire him after Charter contracted with Amerit or that Charter and Amerit made the hiring decision together.

Second, he does not allege that Charter was involved in the decision to fire him.[4] He repeatedly identifies Mr. Maharach or "an agent of Amerit" as the party who terminated him. *See id.*

[4] Mr. Yeremis's complaint includes a wrongful termination cause of action, Compl. at ¶¶ 71–74, but it was brought only against Amerit. For the first time in his opposition brief, Mr. Yeremis alleges that Charter, through Mr. Arben, was involved in the decision to terminate him. *See* Reply Opp'n at 8 ("[I]t was Defendant Charter's alleged employee Mr. Arben who was instrumental in the firing decision . . . ."). While a "district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion," *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013), Mr. Yeremis was represented at the time he filed the Complaint and opposition to this motion. Therefore, the Court cannot consider factual allegations raised for the first time in his opposition to Charter's motion to dismiss. *See Fac., Alumni, & Students Opposed to Racial Preferences v. New York Univ. L. Rev.*, No. 18 CIV. 9184 (ER), 2020 WL 1529311, at *7 (S.D.N.Y. Mar. 31, 2020) ("It is well established in this district that a plaintiff cannot amend his pleadings in his opposition briefs."), *aff'd sub nom. Fac. v. New York Univ.*, 11 F.4th 68 (2d Cir. 2021).

at ¶ 61 ("Mr. Yeremis was fired due to discriminatory reasons by an agent of Amerit . . . ."). Although Mr. Yeremis alleges that Mr. Arben told police officers that Mr. Yeremis had been terminated, *id.* at ¶¶ 53–56, Mr. Yeremis does not allege that Mr. Arben made the firing decision. And any implication that Mr. Arben fired Mr. Yeremis is contradicted numerous times in the Complaint. *See id.* at ¶ 73–74 (stating that Amerit wrongfully terminated him); *id.* at ¶ 82–83 (same)

Third, Mr. Yeremis does not allege that Charter had control over his hours, pay, insurance, records or discipline. The Complaint is devoid of facts describing the administrative details of his employment. He does not allege that Charter set his hours, controlled his schedule, or disciplined him. He also has failed to allege that Charter was involved in his pay or benefits determinations. And his allegation that "the human resource representative from *Amerit*," *id.* at ¶ 46 (emphasis added), told him that he could not return to work until he received medical clearance for his injuries, suggests that Amerit, not Charter, had control over his hours, schedule, and pay.

Fourth, although Mr. Yeremis alleges that Mr. Arben and Mr. Shawn "supervised" him, *see id.* at ¶¶ 17, 21–22, he never describes what this supervision entailed. He states only that Mr. Shawn "never found any fault with the vehicles that [he] serviced[.]" *Id.* at ¶ 17. Mr. Yeremis alleges that Mr. Arben "was abusive . . . and would constantly shout obscenities at" him, *id.* at ¶ 24, but does not allege that Mr. Arben or Mr. Shawn were disciplining him when they engaged in this abusive conduct. Nor does he allege that either Charter supervisor assigned him tasks or determined when he would work. His conclusory statement that Mr. Shawn and Mr. Arben supervised him is not enough, on its own, to plead a joint employment relationship between Charter and Amerit. *See Duff v. Pristine Servs., Inc.*, No. 19-cv-10423, 2021 WL 663981, at *4–5 (S.D.N.Y. Feb. 19, 2021) (dismissing claims against defendant, in part, because the plaintiff did not allege that his supervisor "actually assigned [him] any hours or any tasks," despite the plaintiff's conclusory assertions to the contrary.)

Finally, the control that Charter allegedly exercised over the Facility does not suggest that Charter is his joint employer. Mr. Yeremis alleges that on May 28, 2020, Mr. Arben told Mr. Yeremis that he would have him arrested if he returned to the workplace. *Id.* at ¶ 56. However, alleging that a party controlled a plaintiff's physical workplace does not, on its own, suggest that the entity controlling the workplace is the employee's joint employer. *See Conde v. Sisley Cosmetics USA, Inc.*, No. 11 Civ. 4010, 2012 WL 1883508, at *3–4 (S.D.N.Y. May 23, 2012) (dismissing claim where plaintiff worked for a vendor in the defendant's store and failed to allege more than a "basic level of oversight" by the defendant).

Accordingly, Mr. Yeremis has failed to plead that Charter was his joint employer. *See Felder v. U.S. Tennis Ass'n*, No. 17 Civ. 5045, 2018 WL 5621484, at *4 (S.D.N.Y. Oct. 30, 2018) (dismissing Title VII claims when plaintiff failed to allege that he was sufficiently under defendant's "immediate control" to render it his joint employer); *Kearney v. Kessler Fam. LLC*, No. 11-cv-06016, 2011 WL 2693892, at *5 (W.D.N.Y. July 11, 2011) (dismissing Title VII claims against purported joint employer because plaintiff "d[id] not allege there was any commonality of hiring, firing, discipline, pay, insurance, records, or supervision"). Plaintiff's Title VII claims against Charter are therefore dismissed.

**B. Supplemental Jurisdiction**

Having dismissed all of Mr. Yeremis's federal claims, the Court declines to accept supplemental jurisdiction over his state law claims. Mr. Yeremis brings state law claims for employment discrimination in violation of the NYSHRL and negligent infliction of emotional distress against Charter, and for conversion and negligent infliction of emotional distress against A-1. When a district court has original jurisdiction over claims in a case, it "'shall have supplemental jurisdiction over all other claims that are so related to claims in the action . . . that they form part of the same case or controversy under Article III.'" *F5 Capital v. Pappas*, 856 F.3d 61, 77 (2d Cir. 2017)

(quoting 28 U.S.C. § 1367(a)); *see United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966) ("Pendent jurisdiction . . . exists whenever there is a claim 'arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority,' and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.'" (quoting U.S. Const. art. III, § 2)). Claims are "'part of the same case or controversy' if they 'derive from a common nucleus of operative fact.'" *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011) (quoting *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004)).[5]

The decision to exercise supplemental jurisdiction over a state law claim is by nature discretionary. *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997). Where claims satisfy the "same case or controversy" test under 28 U.S.C. § 1367(a), however, "the discretion to decline supplemental jurisdiction is available *only if* founded upon an enumerated category of subsection 1367(c)." *Shahriar*, 659 F.3d at 245 (quoting *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir. 1998)). Subsection 1367(c) permits a court to decline to exercise supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Here, subsection (3) applies because the Court has dismissed all the claims over which it had original jurisdiction. Thus, the Court may exercise its discretion to decline supplemental jurisdiction over any remaining state law claims.

Even "where at least one of the subsection 1367(c) factors is applicable, a district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so

[5] The Court assumes without deciding that the claim against A-1 involves the same case and controversy.

would not promote the values articulated in *Gibbs*: economy, convenience, fairness, and comity." *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004) (citation omitted). Both the Second Circuit and the Supreme Court have "held that when the federal claims are dismissed the 'state claims should be dismissed as well.'" *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (quoting *Gibbs*, 383 U.S. at 726). "Although this is not a mandatory rule, the Supreme Court has stated that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendant jurisdiction doctrine—judicial economy, convenience, fairness and comity—will point toward declining jurisdiction over the remaining state-law claims.'" *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)); *see also First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 183 (2d Cir. 2004) ("'[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.'" (quotation omitted)). This is the usual case: The Court has evaluated the values set forth in *Gibbs* in the context of this case and has concluded that they support the Court's decision to decline supplemental jurisdiction.

Because the Court has dismissed all of Mr. Yeremis's federal claims and there is no other basis for federal jurisdiction over this case, the Court declines to exercise supplemental jurisdiction over Mr. Yeremis's New York State law claims.[6] *See* 28 U.S.C. § 1367(c)(3).

## V. LEAVE TO AMEND

The Court grants Plaintiff leave to replead his claims against Charter. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead."); *see also* Fed R. Civ. P. 15(a)(2) ("The court should freely give

---

[6] The Court also notes that Mr. Yeremis appears to have abandoned his state law claims against Charter. In two opposition briefs, Mr. Yeremis does not so much as mention the NYSHRL or his claim for negligent infliction of emotional distress, let alone address the arguments in Charter's motion to dismiss. *See Kao v. Brit. Airways, PLC*, No. 17 Civ. 0232, 2018 WL 501609, at *5 (S.D.N.Y. Jan. 19, 2018) ("Plaintiffs' failure to oppose Defendants' specific argument in a motion to dismiss is deemed waiver of that issue.").

leave [to amend] when justice so requires."). While "leave may be denied for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party[,]" those circumstances do not apply in this case. *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (citation omitted). Any amended complaint must be filed no later than fourteen days from the date of this order.

## VI. CONCLUSION

For the foregoing reasons, Charter and A-1's motions to dismiss are granted. Plaintiff's claims against Charter and A-1 are dismissed without prejudice.

The Clerk of Court is directed to terminate the motions currently pending at Dkt. Nos. 64 and 91, and to mail a copy of this order by first class and certified mail to Plaintiff.

SO ORDERED.

Dated: December 13, 2021
New York, New York

GREGORY H. WOODS
United States District Judge